If time allows, I'd like to focus on three issues here. The Elaine issue, the sentencing enhancement for serious physical injury, and the sufficiency of the evidence of the heroin found in the Lopez House on March 1, the third count of the indictment. First, with respect to Elaine, the sentencing court, with the government's blessing and the urging, found that the mandatory minimum did not increase in this case as a result of the judge's findings. The judge gave a guideline sentence. So, why do you think this is an issue? Well, Your Honor, I think there is an issue because the minimum sentence in this case was, I believe, 10 years. And the minimum sentence here was 250 years. Now, I know that the government does rely on this court's holding that says that if a guideline sentence is applied, then Elaine would not apply. However, if we apply that rationale, because the sentencing courts in every single case is duty-bound to apply the sentencing guidelines. So, you're asking us to overrule our precedent? I'm asking you if it's necessary to overrule that precedent, because in my opinion, in my reading, that particular precedent overrules the Elaine mandate and all the other cases that this court decided previously. I would also... Can I just understand? You're accepting that the jury found 100 or more grams? Yes, I am. And so, your only concern is you want a lien to apply to the 1,000-gram finding that's a guidelines finding? That 1,000 grams, yes, that was the... Okay. That upped the ante, and it was found by a preponderance of the evidence. But you're not contesting that there was enough evidence to support the jury's 100-gram finding, 100 or more-gram finding? No, I'm not supporting... Okay. I'm not contesting that at all. So, but I am contesting the fact that the government knew from the outset, and this is the whole intent of a lien, that they knew that they wanted to punish appellant for the 1,000 kilograms if he was... 1 kilogram, I'm sorry, if he were found guilty of the 100 grams or more. So, therefore, it is really puzzling and bewildering that the government did not choose to charge this 1 kilogram amount in the indictment. Now, as this court stated, if we are going to abolish a lien, and I don't think that this court has the authority to do so, I think that, number one, and I read the case carefully in terms of the sentencing guidelines, I think that more of an explanation is necessary, especially since every single court is obliged to apply the sentencing guidelines in every case. So, is this court actually saying that whenever the guidelines is considered and applied, then a lien is not in effect? I really do not think and I urge that that not be the law, especially in a case like this. We see that the evidence upon which the 1 kilogram was based was vigorously contested at court from the beginning of the case to the end of the case. It was based upon Guarino's testimony alone of this so-called one-year conspiracy. The conspiracy consisted, there was no proof of it, there were no drug seeds, there was no surveillance. It was vague testimony. It was given at the prodding of the government as to the amounts, as to the time span, and even at sentencing, the court had to correct the amounts found because it was impossible that Guarino bought those drugs within that time period because one or the other had been in prison at that time. Is there another issue that you wanted to address? Yes. Yes. I would address the serious physical injury enhancement. And I just want to go back one second with respect to the enhancements. When we're talking about the guidelines, the only guideline that applies or the only holding that a lien applies to is the drug quantity. As of yet, a lien does not apply to the other enhancements. As for the serious physical injury enhancement, the government merely glosses over our argument. It does not point to one of the cases that we cited in our brief, neither in this circuit or any other circuit. It merely says, well, there was no injury. And there was serious injury in this particular case. I would say, and I would point to this court's recent decision in USA versus, or Guarino versus Robles, and of course, there was a horrifying injury in that case. It was set forth. Here in this case, we had merely a head injury, a hit on the head. There was no proof at all that this was anything but a superficial injury. There was no hospitalization. Aid was denied. There was no outcry of pain. And as I pointed out in my brief, a head injury can cause diffuse bleeding because the blood vessels are constituted there. And I'm saying that if you're going to apply a two-point enhancement to a defendant's sentence, then you really should have the proof. You just can't willy-nilly say, okay, this knock on the head constitutes a serious physical injury when the underlying evidence is not there at all. Thirdly, I would like to very briefly go into the point of the sufficiency of the evidence of the third count of the indictment. That is the heroin found in the Lopez apartment on the date as specified in the indictment, March 1st. Now, the prosecutor argues and bases his entire argument on the fact that, well, this court found in the Lopez apartment was not foreseeable to appellate. However, we are not just relying on the fact of the foreseeability of this evidence. This is one factor, this inconsistent verdict, that this evidence was not attributed to him. But there is no proof at all. It's just inference on inference that appellant had any clue that he desired to store the drugs in Lopez's apartment. These were drug dealers working independently of one another. We can't just group them together as the government wants to do. They were working together at points. Sure, they were working together. But they brought the first deal, which appellant admitted to, was drugs from a third party. They brought. The second deal, the February 25th transaction, they didn't intend to supply drugs. They intended to take the money and run. So there is really no nexus other than the fact that they were cousins and they worked together on some of these schemes to connect them to the drugs that were found specifically on March 1st. There's a six hour window because he was arrested at 6 a.m. in the morning where these drugs could be attributable to appellant. And I just want to make one more brief thing. Do it in the two minutes you have reserved. Okay, I'll do it on rebuttal. Thank you. May it please the court, David Goodhand for the United States. Happy to address any questions that the court has about any issues. Obviously, that's why I'm here. I'll briefly address the issues raised by my opponent, if I could, in reverse order. Turning to sufficiency, the government induced sufficient evidence relating to the aiding and abetting on count three. In particular, one of the facts omitted from my opponent's recitation was the identity of the brand of heroin that was found both in Montero's bedroom upon the search on March 1st, number one, and number two. The huge quantity of similarly branded, identically branded heroin, future heroin, found in Lopes' house on the same day in a separate search. The identity of those brands, I would suggest, supports the inference that seems that the jury concluded, which is that given that the two were working together over the course of the few weeks leading up to the searches, Montero had knowledge of the stash that was in Lopes' house as evidenced by his possession of the identically branded heroin, number one. But number two, we also have Montero's statement on the tapes where he said, look, I don't like to keep narcotics in my house. So in a sense, it's almost he's literally leaving Lopes holding the bag of narcotics. Put that together with their agreement as evidenced by count one and their working together in the week before, we have sufficient evidence in this deferential setting to support that verdict, count three. With respect to the bodily injury, I'm happy to rest my brief. My core point here is that pursuant to the grouping rules that everybody agreed upon, nobody objected to the PSR's articulation of how the grouping rules worked. As the PSR writer noted, the determinative sentence here, the guidelines range was the drug counts. So in that respect, that's what the court applied. Any distinctions or discrepancies with respect to the robbery count really are immaterial because all people agreed that that was a determinative sentence. With respect to a lien, I think it's pretty clear that the mandatory minimum, 10 years, was triggered by two facts. The valid and reasonable doubt finding of 100 grams relating to count one, number one, and then the prior conviction, number two. I think pursuant to a lien in this court's case law, that was perfectly permissible. The court was allowed to find facts relating to just the guidelines. She's not objecting to that. I'm sorry? She's not objecting to the mandatory minimum. No. And I think what this court's case law, coupled with the lien, says is that it's perfectly permissible for a court to do what the court did here, which is base the ultimate advisory guideline range on the drug quantity that was found. Unless the court has any further questions, the government will rest on its brief and ask that you affirm the convictions and sentence. Thank you. All right. Just very briefly, the fact that Appellant had a small sample of the drug name brand that was found in the Lopez apartment certainly doesn't mean that he knew how much drugs or that drugs were contained in the Lopez apartment. He could have gotten it from anywhere. He could have bought it from anybody. And secondly, the fact that Appellant did not want narcotics in his own home did not mean that he consented to Lopez having those drugs in his home. And with respect to the serious physical injury, I think that this is a point that should be addressed because this is a point that goes down into his pre-sentence report and his prison record thereafter. And it's either right or wrong. It doesn't matter about the grouping. And I know that there was no objection to some of these things, but I think that in this particular case, the plain error rationale applies. And I just want to point out one thing that I was going to point out in my main argument is the government's use of the word throughout the trial and on this appeal that Appellant was a robber, that he was a bandit, that he, you know, all through the summation and everything else, there's really no proof other than the robbery that took place a year before, and we object to the joining of that, that Appellant was a robbery. In the drug grouping cases, there was no robbery and it should have not been denominated a robbery. It was a scam. It was a fraud. Even under Massachusetts law, it was not a robbery. There was no forcible taking. These are street dealers who use the term robbery loosely. It may have been that Appellant used this continual scam to extract money with no intention to give drugs. Therefore, we think that the government was wrong and it was highly prejudicial on both the severance argument and the other arguments as well. Thank you. Thank you.